UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 06-083 (RCL) |
| : | |
| JAMES RUSSELL WOODGATES, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following sentencing recommendation and reasons in support of such recommendation:

Facts

1. On May 5, 2006, the defendant pleaded guilty to one count of Possession of Child Pornography in violation of 18 U.S. Code §2252(a)(4)(B) (2002). The offense occurred between on or about July 2002 and December 6, 2002, while the defendant was employed as an International Radio Broadcaster at the International Broadcasting Bureau (IBB), Voice Of America (VOA) in Washington, D.C.

2. In late November 2002, several of defendant's co-workers observed the defendant viewing what appeared to be pornographic images and movies of young boys on his work computer. After a co-worker reported the defendant's conduct to a supervisor, IBB computer technicians discovered pornographic images of children in the cache files created under the defendant's login name on his computer's hard drive.

3. On December 6, 2002, the defendant's supervisor informed him that he had been seen viewing child pornography. Although the defendant initially claimed to have stumbled upon child

pornography, when confronted with the fact that his computer showed him to have been viewing pornography since the previous July, the defendant said he was ashamed of himself, that it was a bad habit of his, that he should have known better, and that he should not have done it. A week later, the defendant informed his former co-workers that he had retired abruptly because he had been caught "surfing the internet" for pornography. He further admitted that his pornography viewing was of "a serious and longstanding nature" and "involved illegal images." He also acknowledged knowing that what he did was wrong, but he nonetheless stated that he had "persisted in it for several years."

4.    In interviews with the FBI, the defendant admitted viewing pornography, including child pornography, on the internet while at work over the course of several years. He further admitted knowing that such behavior was illegal. The defendant engaged in these illegal activities in a number of specific ways, including browsing web sites containing pornographic images of children; participating, through multiple accounts with MSN and Yahoo, in online groups and chat rooms that discussed and facilitated the trading of child pornography; maintaining, via his MSN and Yahoo accounts, online storage areas containing pornographic images of children and providing other individuals with access to those storage areas; accessing other individual's online storage areas containing pornographic images of children; and sending and receiving pornographic photos of children via the internet. For example, the defendant stated that he maintained in his online storage areas various pictures of high school and junior high school aged children and nudist pictures depicting young boys with erections and young boys masturbating. The defendant also maintained in another folder approximately sixteen pictures including, among others, photographs titled "Male Attachments" and depicting erect penises of boys between thirteen and eighteen years of age. The

defendant also participated in online chat room conversations in which he represented himself to be a teenager. The defendant further admitted that after the meeting with his supervisors which resulted in his dismissal from the VOA, he accessed the internet at a public library in Washington, D.C. and deleted the files in his Yahoo briefcase and folders, his e-mails and his memberships in the various groups to which he belonged.

  5. The FBI's Computer Analysis Response Team performed a forensic examination of the hard drive from the defendant's computer and extracted all image files, as well as the internet history files. Several hundred images were recovered, many of them duplicates, along with a few videos. Approximately 250 separate images and four videos depicted young boys, including prepubescent boys and boys under 12 years of age, engaged in sexually explicit conduct. For example, many of the images are of prepubescent boys performing oral sex on each other; including two which are still photographs from a video of three identified child victims ages 11, 10, and 6. Other photographs depict anal penetration of prepubescent boys by each other or by an adult male. The image files retrieved from the defendant's hard drive were preserved on a compact disc, which was brought to the National Center for Missing and Exploited Children (NCMEC) for analysis. That analysis revealed that the contents of defendant's computer included at least nineteen images of identified child victims of sexual exploitation, including several victims under 12 years of age.

  6. The defendant, through his counsel, timely notified the government of his intention to plead guilty, and thereby permitted the government to avoid preparing for trial and also permitted the government and the Court to allocate their resources efficiently.

Acceptance of Responsibility

7.	In light of the foregoing recitation of the defendant's timely substantial assistance to the government in this investigation, the government requests that the defendant receive an additional one point adjustment for acceptance of responsibility pursuant to §3E1.1(b) of the Sentencing Guidelines.

Sentencing Recommendation

8.	The Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), ruled that the Sentencing Guidelines are advisory rather than mandatory.  However, the Court made clear that in determining the appropriate sentence for a defendant, federal courts still are required to calculate and consider the applicable Guidelines range, refer to the pertinent Sentencing Commission policy statements, and bear in mind the need to avoid unwarranted sentencing disparities and to provide restitution to victims.  *Id.* at 259-60.  Moreover, in determining an appropriate sentence for the defendant, federal courts also must continue to consider the need for the sentence imposed to accomplish the following sentencing objectives:  (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment; (4) afford adequate deterrence; (5) protect the public; and (6) effectively provide the defendant with needed educational or vocational training and medical care.  *Id.* at 260; *see also* 18 U.S.C. § 3553(a)(2).

9.	Arguably, the applicable Sentencing Guidelines range is the most important factor the Court can consider in sentencing the defendant in this case because this range is calculated based upon the Sentencing Commission's careful consideration of all of the factors the Supreme Court and Congress have directed courts to consider in sentencing defendants.  The applicable Guidelines range in this case reflects an intensive objective analysis of sentences imposed on defendants similarly situated to defendant and is a critical tool to avoid unwarranted sentencing disparities.

According to the presentence report, the defendant has an adjusted offense level of 18 and a criminal history category of I, resulting in a Guidelines range of 27 to 33 months.[1]

---

[1] The defendant argues that his extraordinary post-offense rehabilitation provides a basis for a downward departure under the Sentencing Guidelines. The offense level reduction for acceptance of responsibility already takes into account voluntary termination or withdrawal from criminal conduct and post-offense rehabilitative efforts. *See* U.S.S.G. §3E1.1, comment (n.1). However, the D.C. Circuit has recognized that departures might be warranted for post-offense rehabilitative efforts that truly are "extraordinary." *See United States v. Harrington*, 947 F.2d 956, 962 (D.C. Cir. 1991)("We leave open the possibility that, on rare occasion, a further reduction might be in order, but only when and if the rehabilitation is so extraordinary as to suggest its presence to a degree not adequately taken into consideration by the acceptance of responsibility reduction." (Internal citations and quotation omitted.)) In the context of child pornography defendants, departures in published cases of extraordinary post-offense rehabilitative efforts typically have ranged from two to six levels. *See, e.g., United States v. Kapitzke*, 130 F.3d 820, 823-4 (8th Cir. 1997) (upholding unspecified departure of at least four levels for defendant convicted of possessing child pornography who had entered treatment after his arrest and had made significant progress at the time of his sentencing eight months later, noting that while "we are not persuaded" that the defendant's post-offense rehabilitation was outside the heartland of cases, "[o]n this record, we cannot say the district court abused its discretion in finding [defendant's] rehabilitation efforts are extraordinary.");*United States v. Barton*, 76 F.3d 499, 503-4 (2d Cir. 1996) (finding that six-level departure from level 14 to level 8 for defendant convicted of receiving child pornography was inappropriate based on current record in which doctor had cited "no objective indications of [defendant's] progress toward overcoming his condition," but noting that "[i]f the court does find support in the record for its conclusion that [defendant's] rehabilitative efforts are extraordinary, reducing [his] sentence from a minimum of fifteen months' imprisonment to probation would not be unreasonable." (Internal citation and quotations omitted.)); *United States v. McBroom*, 991 F.Supp. 445, 450-1 (D.N.J. 1998) (granting two level departure for extraordinary post-offense rehabilitation to defendant convicted of possessing child pornography who was strongly committed to AA, had been sober for four years, attended weekly therapy sessions, was compliant in taking medication and whom psychiatrist stated had "sincerely committed himself to accepting responsibility and changing his life"); *United States v. Shasky*, 939 F.Supp. 695 (D. Neb. 1996) (granting four level departure from level 14 to level 10 to defendant convicted of receiving child pornography who had entered a renowned sex offender program normally lasting three years, who had been tested psychologically and determined not to be a pedophile, to be "relatively healthy from a mental health point of view," and "not likely to reoffend," and whose progress in the program to date was described by staff as extraordinary). One Court of Appeals noted that an eight level departure in such a case is "remarkable and must be reserved for truly extraordinary cases." *United States v. Goldberg*, 295 F.3d 1133, 1142 (10th Cir. 2002) (remanding for resentencing because impermissible factors were considered in extent of departure, but noting that court permissibly considered defendant's extraordinary post offense rehabilitation, which included voluntarily entering into individual treatment, and volunteering to participate in a research

10. Turning specifically to the § 3553 factors, without question the defendant's conduct in repeatedly viewing images of child pornography was depraved and perpetuated the horrific victimization of the children depicted in those images. Incarceration is necessary and warranted in this case not only to punish the defendant for this extremely disturbing offense, but also to send a message to others that serious consequences will flow from such behavior.

11. The government acknowledges, however, that immediately upon the exposure of his illegal conduct, during the two and a half years before his attorney was contacted by the government, and continuing thereafter, the defendant appears to have taken significant steps toward rehabilitation. These efforts, as reflected in the presentence report, include psychological testing and extensive individual and group therapy with providers who specialize in working with sex offenders. *See* Presentence Investigation Report at ¶¶ 48-52. Without exception, these providers describe the defendant's rehabilitative efforts as exceptional and his risk of re-offending as low. It would appear, therefore, that incarceration is not required to protect the victims or the public from the defendant, or to provide the defendant with appropriate psychological care.

12. Balancing these factors, the government requests that the Court impose a sentence of fifteen months imprisonment, which sentence is reasonable, appropriate and necessary to satisfy Congress's stated sentencing objectives. The government further requests that the Court require as a condition of supervised release that the defendant devote his broadcasting talents to educating the public about the consequences of viewing and trading child pornography on the internet and the availability of appropriate treatment programs, as directed and/or approved by the Probation Office.

---

project, to write a grant, and to provide a taped interview for a radio columnist). The defendant's rehabilitative efforts thus appear to compare favorably to those of similarly-situated defendants to whom courts have granted departures under the Sentencing Guidelines.

Finally, since it appears from the presentence investigation report that the defendant is able to pay a fine, the government requests that the Court impose an appropriate fine.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        United States Attorney
        D.C. Bar No. 451058

By: _____
        ANGELA G. SCHMIDT
        Assistant United States Attorney
        Texas Bar No. 17764980
        Federal Major Crimes Section
        555 4th Street, N.W., 4th Floor
        Washington, D.C. 20530
        (202) 514-7273
        Angela. Schmidt@usdoj.gov